**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **JESSICA R. STEELE,** | * |
| Plaintiff, | * |
| v. | * |
| **SAILING VESSEL "POLARIS,"** Official Number 631121, IMO#RSL44017M8, laying in her slip at 900 Swan Creek Road, Ft. Washington, MD 20744, and her engines, tackle, equipment, furniture, and all other necessaries thereunto appertaining and belonging, *in rem* | *   Case No.: GJH-19-3314 |
| **MARK WILLIAM STEELE,** *et al.* | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Jessica R. Steele, proceeding *pro se*, has brought this action against Defendant Sailing Vessel "Polaris," Defendant Mark William Steele ("Defendant Steele"), and Defendant Alyssa Tantallon, LLC ("Defendant Tantallon"), pursuant to 28 U.S.C. § 1333, Supplemental Rule D for Admiralty and Maritime Claims, and Rule 9(h) of the Federal Rules of Civil Procedure. ECF No. 9 ¶ 4.[1] At Plaintiff's request, this Court issued an Order of Issuance of Process in Rem (Warrant) for the Arrest of the Sailing Vessel "Polaris," authorizing the United States Marshals Service to seize the vessel located in Ft. Washington, Maryland. ECF No. 14. Via separate Order Appointing Substitute Custodian, this Court appointed Coan River Marina, LLC, as substitute custodian of the property. ECF No. 13. Currently pending before this Court is

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Defendant Tantallon's Emergency Motion for Release from Arrest of Sailing Vessel "Polaris." ECF No. 16.[2] This Court conducted a virtual hearing via Zoom.gov on the pending Motion on November 19, 2020. For the reasons stated herein, the Emergency Motion is granted, and the vessel shall be released.

## I.  BACKGROUND[3]

On May 17, 2016, Plaintiff Jessica Steele and Defendant Mark Steele bought the Sailing Vessel "Polaris" as joint tenants with survivorship when they were a married couple. ECF No. 9 ¶ 11. On October 18, 2018, the Steeles were divorced by order of the District of Columbia Superior Court. *Id.* ¶ 13. The parties' settlement agreement, which was later included in the Judgment, stated that:

> The parties are the joint owners of an S/V Polaris boat. The boat shall be sold in an arm's length transaction. The proceeds from the sale shall be used to pay the purchase loan for the boat, held by Discover Financial Service, Inc. Any remaining proceeds after payment of the loan, shall be divided by the parties equally (50%-50%).

ECF No. 9-7 at 4.

On December 28, 2018, Defendant Steele unilaterally sold the vessel to Defendant Alyssa Tantallon, LLC, for $14,000. ECF No. 9 ¶¶ 19–20; ECF No. 9-5 at 2. He signed the bill of sale "on behalf of sellers." ECF No. 9-4 at 2. Plaintiff did not sign the bill of sale and asserts that she did not authorize Defendant Steele or any other person to convey her interests in the vessel or to sign a bill of sale of the vessel on her behalf. ECF No. 9 ¶ 22.

On March 4, 2019, Plaintiff filed a Motion for Expedited Hearing and Enter Final Judgment of Absolute Divorce in the District of Columbia Superior Court. ECF No. 16-6 at 1.

---

[2] Also pending before this Court is Defendant Mark Steele's Request for Dismissal and Sanctions, ECF No. 17, which will be decided in a later opinion.

[3] Unless stated otherwise, all facts are taken from Plaintiff's Amended Complaint or documents attached to and relied upon in the Amended Complaint and are accepted as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

The Motion stated that Plaintiff's "financial condition requires that our marital asset boat be sold as soon as possible as per the [settlement] agreement." *Id.* Plaintiff alleged that Defendant Steele had impeded the sale of the boat and, questioning the legitimacy of the sale to Defendant Tantallon, attempted to sell the boat without her knowledge, telling the potential buyer that the boat could be sold without her signature, drafting a contract of sale, and receiving a deposit on the jointly titled boat. *Id.* Plaintiff requested access to the boat and power of attorney giving her authority to sell the jointly titled boat on Defendant Steele's behalf. *Id.* at 7.

After the Court issued the Judgment of Absolute Divorce on May 2, 2019, which included the terms of the parties' settlement agreement but did not separately address the issues raised in Plaintiff's motion related to Defendant Steele's alleged unilateral sale, ECF No. 16-7 at 7–10, Plaintiff filed an Expedited Motion to Enforce the Order of May 2, 2019 to Prevent Impending Foreclosure, on May 31, 2019, ECF No. 16-7 at 1–2. The second motion reiterated her prior request that the court compel Defendant Steele to make the boat available for sale and asked the court to impose sanctions on Defendant Steele. *Id.* at 1.

On July 11, 2019, Defendant Tantallon sent an Application for Exchange of Certificate of Documentation, U.S. Coast Guard Form CF-1285 to the National Vessel Documentation Center ("NVDC"). ECF No. 9 ¶ 18; ECF No. 9-3. In response, the NVDC sent a Deficiency Letter dated October 4, 2019, stating that the Bill of Sale submitted was not "eligible for recording because the instruments were not signed by Jessica R. Steele for her interest in the vessel," and Defendant Steele's signature "on behalf of sellers" was "not sufficient." ECF No. 9-6 at 2. Thus, the issuance of the Certificate of Documentation would remain pending. *Id.*

On November 18, 2019, Plaintiff filed a Complaint in this Court, ECF No. 1, amended on May 26, 2020, ECF No. 9, alleging that Defendant Steele had unlawfully sold the vessel to

Defendant Tantallon below its fair market price in a "sham 'arm-in-arm' transaction" without her authorization as joint owner, *id.* ¶¶ 20–27. Plaintiff further asked the Court to confirm Plaintiff's title to the vessel as a fifty-percent co-owner, *id.* ¶¶ 29–33, and order that she shall have access to and right of possession of the vessel, *id.* ¶¶ 34–36. Plaintiff also requested compensatory and punitive damages. *Id.* ¶¶ 37–42.

The following day, November 19, 2019, Plaintiff participated in a hearing in the District of Columbia Superior Court before Judge Erik Christian concerning her Expedited Motion to Enforce the Order of May 2, 2019 to Prevent Impending Foreclosure, ECF No. 16-7 at 1–2. *See* ECF No. 16-8 at 1; *see also* Hearing Transcript Volume I, *Steele v. Steele*, No. 2018 DRB 000545 (D.C. Super. Ct. Nov. 19, 2019) ("Nov. 19 Hearing Tr. Vol. I"); Hearing Transcript Volume II, *Steele v. Steele*, No. 2018 DRB 000545 (D.C. Super. Ct. Nov. 19, 2019) ("Nov. 19 Hearing Tr. Vol. II"); Hearing Transcript, *Steele v. Steele*, No. 2018 DRB 000545 (D.C. Super. Ct. Nov. 20, 2019) ("Nov. 20 Hearing Tr."). During the two-day hearing on the motion, Plaintiff argued that Defendant Steele had sold the vessel in an arm-in-arm transaction without her signature on the bill of sale in violation of their separation agreement. *See* ECF No. 16-8 at 2. According to Plaintiff, Defendant Steele had unilaterally sold the boat for well below its market price to a straw buyer from whom he intended to repurchase the boat later. *See id.* Both parties spent substantial time during the hearing arguing about and calling witnesses regarding the fair market value of the boat and the relationship between Defendant Steele and Defendant Tantallon, issues relevant to determining whether there had been a valid arm's length transaction. Plaintiff also repeatedly raised the issue of Defendant Steele's sale of the boat without her signature, arguing "there's no language in the court order that gives my husband the right to take away my rights as a co-owner. So he's not authorized to sign for me and sell the boat without my

4

agreement"; "[n]obody can sell a jointly-owned property that I own without my signature"; and "[h]e signed on behalf of the sellers." Nov. 20 Hearing Tr. at 31, 174, 185.

The court issued its Order on January 10, 2020, finding against Plaintiff and stating, "[t]here is insufficient evidence in the record to find that [Defendant Steele] violated the parties['] separation agreement by selling the boat to Mr. Todd [owner of Defendant Tantallon] for $14,000." ECF No. 16-8 at 6–7. The court found that Plaintiff had failed to show that Defendant Steele sold the boat to an interested or affiliated party or that he sold the boat below fair market value. *Id.* at 5. Although the Order does not explicitly address issues beyond whether there was an arms-length transaction, during the hearing, the judge stated that the ownership dispute between Plaintiff Steele and the buyer was "what I have to determine. That's what this hearing is about," Nov. 19 Hearing Tr. Vol. I at 61, and emphasized that he had authority to "order the boat be sold" and "vest title in personal property, such as this boat," Nov. 20 Hearing Tr. at 179. Plaintiff did not appeal the court's Order.

On May 26, 2020, Plaintiff filed a Motion for the Issuance of Process in rem (Warrant) against the Polaris, ECF No. 11, and a Motion for Order Appointing Substitute Custodian, ECF No. 10, in this Court. The Court granted both motions on October 20, 2020. ECF No. 13; ECF No. 14. On November 13, 2020, Defendant Tantallon filed an Emergency Motion for Release from Arrest of Sailing Vessel "Polaris." ECF No. 16. On November 16, 2020, Defendant Steele filed a Response in Support of the Motion as well as a Request for Dismissal and Sanctions. ECF No. 17. A hearing was held on November 19, 2020, pursuant to Supplemental Rule E(4)(f).

## II.   STANDARD OF REVIEW

After a ship arrest, a defendant may appear and move to vacate the arrest pursuant to Supplemental Admiralty Rule E(4)(f), which provides, in relevant part:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

Fed. R. Civ. P. Adm. Supp. R. E(4)(f). "The function of the expedited postarrest hearing is to afford due process to the shipowner whose vessel has been arrested without a prearrest hearing." *Mujahid v. M/V/Hector*, 948 F.2d 1282 (Table), 1991 WL 254121, at *1 (4th Cir. 1991) (unpublished) (citing *Amstar Corp. v. S/S Alexandros T.*, 664 F.2d 904, 910–12 (4th Cir. 1981)). Consequently, "the postarrest hearing is not intended to resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant, and if so, to fix an appropriate bond." *Salazar v. The Atlantic Sun*, 881 F.2d 73, 79–80 (3rd Cir. 1989). At the hearing, "the plaintiff has the burden of showing probable cause for the arrest." *Amstar Corp.*, 664 F.2d at 912. For purposes of determining whether a plaintiff has met this burden, the Court has discretion to consider extrinsic evidence presented at the hearing. *Mujahid*, 948 F.2d 1282, 1991 WL 254121, at *1; *see also Linea Navira De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A.*, 169 F. Supp. 2d 1341, 1358 (M.D. Fla. 2001).

### III.   DISCUSSION

#### A.  Jurisdiction

Defendant Tantallon first asserts that the arrest must be vacated because this Court does not have jurisdiction over the action, as the issues here center on a contract for sale and a divorce decree. Under 28 U.S.C. § 1333, United States District Courts have original and exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1); *see also* U.S. Const. art. III, § 2, cl. 1 ("The judicial power shall extend to. . . all Cases of admiralty and maritime Jurisdiction."). "It is well-established that a contract to build a vessel, or a contract for the sale of a vessel, is not a maritime contract and, therefore, fails to establish

6

maritime jurisdiction." *Fawzy v. Wauquiez Boats SNC*, No. CV RDB-16-3363, 2016 WL 6031940, at *3 (D. Md. Oct. 14, 2016). The Fourth Circuit "affirmed this principle in *Flota Maritima Browning de Cuba v. Snobl*, 363 F.2d 733 (4th Cir. 1966), observing that 'the prevailing rule has been that a contract for the sale of a ship is not a maritime contract.'" *Id.*

However, Plaintiff here does not bring a claim asserting rights arising out of a purchase contract or divorce decree. *Cf. Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, Hull No. 01*, 625 F.2d 44, 47 (5th Cir. 1980) ("[A]dmiralty will not entertain suits where the substantive rights of the parties flow from a contract to sell or construct a vessel."). Instead, she asserts an ownership interest in the vessel and asks the Court to quiet title. *See Hunt v. A Cargo of Petroleum Prod. Laden on Steam Tanker Hilda*, 378 F. Supp. 701, 703 (E.D. Pa. 1974) ("A suit to try title to or possession of a ship wrongfully taken has long been considered within the jurisdiction of admiralty courts regardless of whether the claim to the ship is based on the breach of a maritime contract or the commission of a maritime tort."); *Jones*, 625 F.2d at 47 (finding that, although jurisdiction did not exist over a dispute solely concerning a contract for the construction of a vessel, there was jurisdiction where the case involved "an allegation by the plaintiff of ownership, right to immediate possession, an unlawful taking and detention by defendant and damages caused to the vessel by such tortious conduct by defendants"). Therefore, the Court finds that it has jurisdiction over this matter.

### B. Collateral Estoppel

Defendants next argue that Plaintiff's claims are barred by collateral estoppel as a result of the January 10, 2020 Order of the Superior Court of the District of Columbia ("D.C. Order"), ECF No. 16-8. "Generally, the preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008). Here, the judgment was rendered in the

District of Columbia. District of Columbia courts have held that collateral estoppel, or issue preclusion, renders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum. *Newell v. District of Columbia*, 741 A.2d 28, 36 (D.C. 1999); *Davis v. Davis*, 663 A.2d 499, 501 (D.C. 1995); *Washington Medical Center v. Holle*, 573 A.2d 1269, 1283 (D.C. 1990); *Smith v. Jenkins*, 562 A.2d 610, 617 (D.C. 1989); *Ali Baba Co. v. WILCO*, Inc., 482 A.2d 418, 421 (D.C. 1984).

Traditionally, collateral estoppel also required mutuality—"that, as a general proposition, one who invokes the conclusive effect of a judgment must have been either a party or his privy to the suit in which the judgment was rendered." *Jackson*, 412 A.2d at 952 (quoting 1B Moore's Federal Practice P0.412(1) at 1801 (1974)); *see also Ali Baba Co.*, 482 A.2d at 421 n.7. Only Plaintiff and Defendant Steele were parties to the D.C. proceeding. *See* ECF No. 16-8. Although the owner of Defendant Tantallon testified at the November 19, 2019 hearing, Defendant Tantallon was not a party in that case, meaning the mutuality requirement is not met here. However, the assertion of non-mutual defensive collateral estoppel—where a defendant asserts preclusion against a plaintiff on issues that were litigated in a prior suit by the same plaintiff against a different party—is permitted under District of Columbia law. *Bryson v. Gere*, 268 F. Supp. 2d 46, 57 (D.D.C. 2003) (citing *Jackson v. District of Columbia*, 412 A.2d 948, 952–53 (D.C. 1980) (agreeing there is "no satisfactory rationale for the mutuality doctrine when preclusion is asserted against a party who already has had a day in court on the issue")). Thus,

because collateral estoppel is being asserted defensively in this case, and Plaintiff Steele was a party to the prior litigation, Defendant Tantallon may assert issue preclusion against her.

The Court therefore proceeds to consider whether the four elements of issue preclusion are met, beginning with whether the issues contested here were actually litigated in the prior proceeding. An issue is "actually litigated" where it "is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Ali Baba Co. v. WILCO*, Inc., 482 A.2d 418, 421 (D.C. 1984) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27(d)); *see also Davis*, 663 A.2d at 501. "Issue preclusion does not apply when the issues in the prior and current litigation are not identical, even though [they are] similar." *Hogue v. Hopper*, 728 A.2d 611, 614 (D.C. 1999) (quoting *Hutchinson v. District of Columbia Office of Employee Appeals*, 710 A.2d 227, 236 (D.C. 1998)) (alteration in *Hogue*). In the Amended Complaint, Plaintiff argues that she maintains fifty-percent ownership of the vessel because 1) Defendant Steele did not sell the vessel in an arm's length transaction, but rather in a "sham" transaction, and 2) he sold the vessel unilaterally, without obtaining her signature on the bill of sale. ECF No. 9 ¶¶ 24–36. Therefore, Plaintiff argues, the December 2018 sale did not validly convey her ownership interest to Defendant Tantallon. *See id.* ¶ 32. Having reviewed the Order and the transcript of the two-day hearing, the Court finds that Plaintiff raised identical issues in the D.C. proceeding, repeatedly arguing that the December 2018 sale was not an arm's length transaction and that Defendant Steele had unlawfully signed the contract "on behalf of sellers," rather than obtaining her signature as joint owner. Accordingly, the Court concludes that Plaintiff's dual challenges to the December 2018 sale's validity and the transfer of the boat's ownership to Defendant Tantallon were actually litigated.

"A full and fair opportunity requires procedural due process." *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 315 (D.D.C. 2011). A party had a "full and fair opportunity for litigation" where "an evidentiary hearing was held on [the party's] claim, [and] the parties were given an opportunity to make opening and closing statements, to call witnesses, to cross-examine witnesses, and to introduce exhibits" and where "[t]he hearing examiner made findings of fact and conclusions of law on the issues[.]" *Oubre v. D.C. Dep't of Employment Servs.*, 630 A.2d 699, 703 (D.C. 1993); *see also Davis*, 663 A.2d at 502. A court will not find there was such a "full and fair opportunity" where "the losing party clearly lacked any incentive to litigate the point in the first trial, but the stakes of the second trial are of a vastly greater magnitude," such that preclusion would "work a basic unfairness to the party bound by the first determination." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992); *see also Lans*, 786 F. Supp. 2d at 315. Here, there was an evidentiary hearing during which Plaintiff had the opportunity to make opening and closing statements, to call and cross-examine witnesses, and to introduce exhibits. And evidence was presented and arguments made on both issues now before this Court. Judge Christian of the D.C. Superior Court issued an order making findings of fact and law. ECF No. 16-8. There was no defect in the process, and Plaintiff was incentivized to raise and litigate the issues in the D.C. proceeding. The Court thus finds Plaintiff had a "full and fair opportunity to litigate" the issues.

The D.C. Order was a "valid, final judgment on the merits," as it was a final order that Plaintiff did not appeal. However, the parties have disputed whether the final judgment actually determined the issue contested here—whether the court found the sale to Defendant Tantallon was valid and lawful, extinguishing Plaintiff's ownership interest and quieting title—or whether it only addressed whether Defendant Steele had sold the boat in an arm's length transaction. At

10

the hearing before this Court on November 19, 2020, Plaintiff attempted to demonstrate that the D.C. Superior Court did not address the issue of title by pointing to statements where the judge said "an action of quiet title, that's a separate action," and "I'm not doing an action to quiet title." Nov. 19 Hearing Tr. Vol. I at 58. However, read in context, it is clear that these statements were made when, due to a miscommunication, the judge was under the impression that an unrelated party was asserting title. After the confusion was resolved, and the judge recognized that the party Plaintiff said was contesting title was the buyer, Defendant Tantallon, he clarified that the ownership dispute between Plaintiff and the buyer was "what I have to determine. That's what this hearing is about." *Id.* at 61. He later emphasized that he had authority to "order the boat be sold" and "vest title in personal property, such as this boat." Nov. 20 Hearing Tr. at 179. Thus, the judge understood that his judgment extended beyond deciding whether there had been an arm's length transaction and included determining the validity of the vessel's sale and vesting title. Therefore, the Court finds that the D.C. Order determined there was a valid sale transferring title in "a valid, final judgment on the merits."

Finally, collateral estoppel requires that determination of the relevant issues was essential to the judgment, "and not merely dictum." *Washington Med. Ctr. v. Holle*, 573 A.2d 1269, 1283 (D.C. 1990). By issuing a judgment finding Defendant Steele had not breached the provision of the settlement agreement requiring a sale of the vessel, the judge, while clearly aware of the issue regarding Plaintiff's alleged lack of authorization, necessarily determined that the sale was valid and lawful. To be clear, Plaintiff raises a non-frivolous issue regarding the fact that she did not authorize the sale; but the forum to contest Judge Christian's ruling in this regard would have been through a Motion for Reconsideration before Judge Christian or an appeal of his ruling. The issue of the sale of the boat was an issue squarely placed into the divorce proceedings by way of

11

a settlement agreement determining that it would be sold. Plaintiff now raises before this Court the precise arguments she raised before Judge Christian. As all four of the elements of collateral estoppel are satisfied, the Court concludes that Plaintiff is barred from challenging the validity of the December 2018 transaction on the grounds that it was not an arm's length transaction and that she did not sign the bill of sale. Plaintiff has improperly attempted to try her claims in parallel proceedings, and having lost in the first court, she cannot continue to litigate in this one. Accordingly, Plaintiff has not shown probable cause for the vessel's arrest, and the vessel will be released.

### C. Costs

In addition to moving to vacate the arrest of the Sailing Vessel "Polaris," Defendant Tantallon requests that Plaintiff be ordered to pay costs related to the arrest, transportation, storage, and return of the vessel; Defendant Tantallon's attorney's fees; and "further relief as the Court deems appropriate." ECF No. 16-1 at 6. Because Plaintiff initiated this claim despite having litigated in the issue in another forum, the Court orders that Plaintiff bear the costs associated with the vessel's arrest. *See Indus. Mar. Carriers, LLC v. Dantzler, Inc.*, 62 F. Supp. 3d 1355, 1358 n.2 (S.D. Fla. 2014), *aff'd*, 611 F. App'x 600 (11th Cir. 2015) (courts have discretion to award custodial costs even where the party acted in good faith); *Beauregard, Inc. v. Sword Servs. L.L.C.*, 107 F.3d 351, 353 (5th Cir. 1997) (courts' division of custodial expenses "largely discretionary and vary in different cases"); *cf. Lubricantes Venoco, Int'l, C.A. v. M/V NEVERIS*, 60 F. App'x 835, 842 (1st Cir. 2003) ("It is a well-established tenet of admiralty law that the arresting plaintiff and the intervening plaintiffs share in the costs of maintaining the *res* until resolution of the case."); *see* U.S. Marshal's Manual at 276 ¶ d (stating that pursuant to 28 U.S.C. § 1921, the party initiating the arrest of the vessel is responsible for a ten day advance for his expenses to cover cost of service, custody and safekeeping, and "[f]ollowing the seizure of a

vessel, the party initiating such action may be periodically requested to deposit additional funds in advance with the U.S. Marshal as may be necessary to cover costs until the litigation is concluded.").

However, as the Court does not find the Plaintiff acted in bad faith, it will not award attorney's fees or other damages. *See Williams v. Prof'l Transp. Inc.*, 294 F.3d 607, 614 (4th Cir. 2002) ("Under the American Rule, each party bears its own costs of litigation unless statutory authority exists for an award of attorneys' fees or an exception to the rule applies. One exception to the rule allows a district court to assess attorneys' fees against a losing party when it has acted in bad faith, vexatiously, or wantonly.") (citations omitted); *Ocean Ship Supply, Ltd. v. MV Leah*, 729 F.2d 971, 974 (4th Cir. 1984) (damages for wrongful seizure require a finding of "malice or bad faith").

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Emergency Motion for Release from Arrest of Sailing Vessel "Polaris," ECF No. 16, is granted. A separate Order follows.


Dated: December 21, 2020                             /s/
                                                GEORGE J. HAZEL
                                                United States District Judge